UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SONYA STIRGUS                  *       CIVIL ACTION

                                    *

VERSUS                       *       NO. 17-11645

                                      *

DILLARD DEPARTMENT STORES, INC.      *       SECTION "B" 1

                                      *

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

May it please the Court:

Defendant, Highbee Lancoms, LP (Dillards) has filed a Motion for Summary Judgment seeking dismissal of "Plaintiff's claims because she cannot meet her burden of proof under Louisiana Revised Statute 9:2800.6(A).  Specifically, she cannot establish that Dillard's was negligent or that it failed the to exercise reasonable care." (Document 13)

Defendant further states "...there is no genuine issue of material fact that requires a trial." (Document 13-1)

Defendant is wrong on both points.

### Facts

On the night of October 21, 2016, Plaintiff went to defendant's store in Oakwood Mall. Plaintiff testified as follows:

"...just to get a girdle..." (Document 13-5, page 35)

"Q. All right, so do you know if any part of your body struck any part of that shelf
      prior to the mannequin falling?
A. No.
Q. No, you don't know; or no, it did not?
A. It did not.
Q. Do you know if any of your kids touched the shelf prior to the mannequin

falling?
A. No, they didn't.
Q. Do you know if any of the merchandise you were looking for touched or struck the shelf?
A. No, it didn't."
(Document 13-5, page 39, lines 9-20)

"Q. Did you pick up the mannequin afterwards?
A No.
Q. Do you have any idea how much it might have weighed?
A. Judging from it hitting my head, I would say at least a good, maybe 30 pounds.
Q. But you never picked it up afterwards?
A. No."
(Document 13-5, page 38, lines 3-10)

"Q. You had your kids there with you, right?
A Yes.
Q. What were they doing in the moments before this occurred?
A. Just standing there.
Q. They weren't running around playing games or anything like that?
A. No.
Q. They were just standing right by you?
A. Yes."
(Document 13-5, page 38, lines 20 through page 39, line 4)

"Q. So to sum up the last couple of minutes, you don't think you or your kids did anything to make the mannequin fall, but you have no idea why it fell?
A. Correct."
(Document 13-5, page 41, lines 1-5)

"Q. What happened immediately after that?
A. One of the associates, she came maybe like one minute later, and I can hear her picking up the mannequin.
Q. What did you do?
A. I was just holding my face, crying.
Q. Were you sitting on the floor, were you standing?
A. I was standing.
Q. So from the moment the mannequin hits you, you were standing -- where were you standing?
A. I was standing -- when the mannequin actually hit me, --
Q. Yeah.
A. -- I was bent over looking at the merchandise underneath the mannequin.
(Document 13-5, page 41, line 12 through  page 42, line 2)

Further there were no other customers in the vicinity at the time the mannequin fell. (Plaintiff's Exhibit A)

## Walter Boone

The defendant's sales manager, Walter Boone, has testified to the following facts when he arrived at the scene:

That while at the scene, he did not "come in contact with the mannequin, touch it, pick it up or move it or put it back on the shelf. (Document 13-4, page 24)

That the mannequin was never put back on the display shelf after it fell. It was put in storage and has since disappeared. The mannequin that fell was owned by the defendant. (Document 13-4, page 26) The shelf from which the mannequin fell was not connected to the metal brackets that hold the hanging merchandise beneath the shelf. (Document 13-4, page 30)

The shelf was also removed after the accident and has since disappeared.

As part of his investigation into the cause of this accident Mr. Boone reviewed the in store surveillance:

> "Yeah. So it didn't really show much, It showed the mannequin on the shelf, and then by the time it rotated and made its pass, the mannequin was not on the shelf. And that's really all that I saw. It's hard to tell what happened from the footage." (Document 13-4, page 33, lines 19-25)

The video does not show Plaintiff's two children being "...hyper, running around or trying to grab his clipboard."( Plaintiff's Exhibit B)

Mr. Boone, who's job it was to determine the cause of the falling mannequin ended his investigation after he reviewed the video that night.

Mr. Boone was not able to determine the cause of the mannequin fall.

(Document 13-4, page 32)

Mr. Boone's conclusion was that:

"Q. Okay. Do you have any information to indicate that the customer somehow caused this fall?

A. The only indication what would have, to me, would have been the clhildren playing.  Like I said, the boy was really excited to see me and my clipboard and tried to take my clipboard from me.  So I would be assuming that they could have been the cause of it.  But it would have taken force to make that mannequin fall.

Q. Take some force to make it fall?

A. Right.

Q. Okay. Did you see any evidence of the children having caused it?

A. No.

Q. I mean, other than the child reacting to your clipboard, anything else?

A. No."

(Document 13-4, page 42, line 12 through  page 43, line 5.  See also page 18-19.)

There was only one employee on duty in the lingerie department at the time of Plaintiff's accident.

According to the store manager, Justin Dubyak, this mannequin was touched and moved to clean both the mannequin and the display shelf on a daily basis.

Only defendant's employees "dressed" the mannequins. (Document 13-4, page 27) In other words, the only people who handled the mannequins would be defendant's employees - on a daily basis.

## The Mannequin

Although the actual mannequin that fell has since disappeared, there is one existing photograph of it (Document 13-5) taken by Walter Boone.

According to Mr. Boone, the fallen mannequin "...was typical for the department" (Document 13-4, page 32)

A closer look at the photo shows that the torso mannequin in question did not have its stabilizing metal base attached.  This is contrary to other mannequins used in the lingerie

department as evidenced by Plaintiff's Exhibit C.[1]  That photograph shows other mannequins in lingerie department held in place with metal support braces.

Mr. Boone further testified that the mannequin that fell was not attached or secured to the wall, the anchors in the wall, the ceiling or to anything. (Document13-4, page 36) This supports Plaintiff's allegations of negligent maintenance and inspection of Defendant's displays. (See Document 13-6, Paragraph V)

### Applicable Law and Argument

While the facts are rather straight forward the more complex issue is to determine which Louisiana law(s) is applicable to the above facts.

La.CC Art. 2315 v. LA.R.S. 9:2800.6(A)
La.CC Art. 2315 v. LA.R.S. 9:2800.6(B)

Plaintiff alleges in her petition a pure general negligence claim pursuant to La. CC Art.2315.  Plaintiff has not pled nor do the facts support a claim under La. R.S. 9:2800.6.

It was not store "merchandise" that fell onto Ms. Stirgus.  It was an unsecured mannequin.

As Plaintiff did not slip, did not fall and did not allege a defect in or on the Defendant's premises; R.S. 9:2800.6(B) is inapplicable.

This is not a "falling merchandise" case subject to R.S. 9:2800.6(A).

This does not involve an aisle, passageway or floor.

Quite simply, Plaintiff's claim is based upon Defendant's failure to properly set up, secure, inspect and maintain it's display mannequin.

The photographic evidence clearly shows that the mannequin in question was negligently

---

[1]Plaintiff's Exhibit C was taken by Plaintiff's counsel following Mr. Boone's deposition.

assembled and/or reassembled after "dressing" and/or cleaning it. The photographs clearly show the mannequin was not secured to a metal base like the other mannequins in the lingerie department (Plaintiff's Exhibit C) The lack of this metal stabilizer base caused and/or greatly contributed to the fall.

Defendant's daily inspections by all of its associates and by the manager himself - failed to notice the dangerous condition created by a mannequin with no metal display base. Not one employee, associate or manager noticed the missing metal display base used to stabilize torso mannequins in the lingerie department. Had the mannequin been properly secured with the display base, this accident would not have happened. There is no evidence that anyone other than Defendant's employees assembled and placed the mannequin or moved it to such a precarious position that it was in danger of falling.

With a pure general negligence claim based on La.CC Article 2315 it is the duty risk analysis that is the standard to which the facts of this case must be applied.

La. R.S. 9:2800.6(A) sets forth the defendant's duty to it's customers. "In a falling merchandise case, the claimant is not held to the heightened burden of proof set forth in La. R.S. art. 9:2800.6(B). *Smith, supra.* This issue was not included in Motion for Summary Judgment and was not addressed by defendant in brief and such the Motion for Summary Judgment must be denied.

## The Louisiana Doctrine of Spoliation of Evidence

Neither the mannequin or the display shelf are available to Plaintiff.

The jurisprudential law applicable to the above fact is that of Spoliation of Evidence.

The defendant's mannequin and shelf were intentionally removed to storage and the whereabouts of the mannequin and the shelf are presently unknown.

Although this doctrine is much discussed and often confused and misapplied this doctrine is quite simple.

For the evidentiary presumption (not to be confused with the La. Tort of intentional Spoliation) the doctrine is "where a litigant fails to produce evidence available to him and gives no reasonable explanation, the presumption is that the evidence would have been unfavorable to his cause. The presumption is not applicable where the failure to produce evidence is explained.

An unrebutted adverse presumption creates a question of material fact sufficient to deny Defendant's Motion for Summary Judgment. *Kammerer v. Sewerage & Water Bd. of New Orleans*, 633 So. 2d 1357, 1358 (La. Ct. App.), writ denied, 94-0948 (La. 7/1/94), 639 So. 2d 1163; *Boh Bros. Const. Co. v. Luber-Finer, Inc.*, 612 So. 2d 270 (La. Ct. App. 1992), writ denied, 614 So. 2d 1256 (La. 1993).

In an abundance of caution - Should the Court deem this a "falling merchandise case" - Plaintiff will briefly address the Plaintiff's burden of proof. See *Smith v. Toys "R" Us, Inc.*, 98-2085 (La. 11/30/99), 754 So. 2d 209; *Davis v. Wal-Mart Stores, Inc.*, 2000-0445 (La. 11/28/00), 774 So. 2d 84.

1.Here Plaintiff has produced uncontroverted and direct credible evidence that she did nothing to cause the mannequin to fall. 2. There was no other customer in the aisle at the time the mannequin fell; and 3. The defendant's negligent set up of the display(missing metal display stand) along with defendant's negligent daily inspections of the display, along with the defendant's employees daily touching and moving the display for cleaning leads no other conclusion but that the mannequin was obviously left in an unsafe and unsecured position on the shelf which eventually caused the fall. With this, as per *Davis, supra*, Plaintiff has proven the existence of an unreasonably dangerous condition and/or a hazardous condition.

With ths showing of a prima facia premises hazard, the burden then shifts to the defendant to exculpate itself from fault. (See *Smith, supra* and *Davis, supra*) Defendant's Motion for Summary Judgment must fail as it has not rebutted Plaintiff's prima facia case.

## Objections

Plaintiff objects to the Court's consideration of any comments by Mr. Boone concerning his assumptions about Plaintiff's children and his implied cause of this accident based on the alleged post accident behavior of the children along with Defendant's argument of implied fault based on the inadmissable assumptions of Mr. Boone.

## Conclusion

Defendant seeks to somehow imply that it was one or both of Plaintiff's children that somehow were able to knock the mannequin from its shelf. There is not a shred of admissible, creditable evidence to support these innuendoes. In fact, Defendant's area manager concluded that the mannequin was not knocked over by the children

Although Plaintiff has no way to determine exactly why the mannequin fell, the cause of the fall is quite simple. Defendant's employees failed to secure the mannequin to a metal support base. Defendant's daily insepctiosn failed to reveal this hazard. This allowed the mannequin, which was moved and cleaned on a daily basis to simply fall over onto Plaintiff. Pure negligence on defendant's part.

It is defendant who seeks to convert a pure negligence claim, to which it has no defense, to the protection of the merchant responsibility statute La R.S. 9:2800.6. Unfortunately the facts, pleadings and the jurisprudential case law does not support such a conversion.

Respectfully submitted:

_____
WILLIAM E. MURA, JR. (#9834)
WARREN A. FORSTALL, JR. (#5717)
320 N. Carrollton Ave., Suite 200
New Orleans, Louisiana 70119
Telephone:    (504) 483-3400
Facsimile:    (504) 483-3447
E-Mail:       bill@wmuralaw.com
Attorneys for Plaintiff, Sonya Stirgus

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing pleading has been served upon counsel for all parties by either CM/EDF or by mailing the same to each properly addressed and postage prepaid on this 14th day of August, 2018.

_____
WILLIAM E. MURA, JR.